We'll move on to our second argument in the set for today, United States v. Cunha, and then we'll move on to our second argument in the set for today, United States v. Cunha, for Russ Smoot for the United States, appellant in this go-around, and I'd like to just reserve three minutes for rebuttal. Your Honor, we're here because of an imperfect search warrant affidavit written by a law enforcement officer in the haste of a criminal investigation, and the district court's review, erroneous review, of that search warrant affidavit. So, can I start with the standard review here, because we have a state court judge that issues the, or grants the search warrant, right? Yes. And then you challenge that in the federal court. We review the federal court's decision de novo, is that correct? Correct. And don't we still give deference to the magistrate judge, the state magistrate judge who issued the warrant? Yes, Your Honor, but it is a, but it would be a de novo review of the district court's review. Correct. Okay, but you don't disagree that we give deference to the magistrate's finding here? I do not, yes, correct. So again, the reason why we're here is because of an imperfect warrant. There are flaws in it, absolutely, but I would say that perfection has never, has not been the standard. It's something that everybody strives for, but I would say in 20 years of reviewing Ninth Circuit case law on wiretap affidavits and search warrant affidavits, many a time has an imperfect affidavit been upheld because the supporting requisites were there. But of course, the only reason those cases are in the Ninth Circuit is that those were arguable cases, right? True. So you're saying using those as evidence that we get a lot of imperfect warrants or warrant applications. Well, the perfect ones, I don't think they come to us. I would not disagree with that, Your Honor, and that's why, and again, that's why I wouldn't say we're... Okay, so I guess that's another question is, well, we don't owe any deference even to the, do we owe deference to the federal district court's finding that there were intentional mislead, intentional omissions from the search warrant? No, no, we have not challenged the omissions, and I think if the government was challenging the omissions part of, if we go into the Franks part of it, we're really challenging the second prong. If we were challenging the omissions, I think that that would be, the standard review would probably fall into that mixed fact and law in that the omissions are factual findings. So basically, before us, we're assuming that these omissions come in and should have been considered and then our inquiry is, even with those omissions, do we have enough to support the search warrant? Yes, Your Honor. And I think the reason for that really goes beyond or goes back, I should say, to what I would say is not necessarily the other issue, but obviously there's the issue of the typographical error, the Scribner's error. Can I ask about that? How would we decide that? I didn't really see any Ninth Circuit cases on how we resolve a discrepancy of this nature. I mean, obviously we have numbers that have, but where you actually have a substantive difference, do we do that as we would with a statute and apply the Scribner's rule or do we look at it, it seems like the government's arguing, we need to take a common sense approach to what was really meant here. I believe that the common sense approach, the common sense realistic fashion for review presupposes reading the affidavit, again, the four corners of the affidavit as a whole, and if there are Scribner's errors that can be... You think we just got to kind of put our head in the sand and say, we're reading this, it doesn't make sense. I mean, why in the world would they go search number 54 if they were told that he didn't own 54? Like, it doesn't really kind of make any sense, but you're saying we have to just suspend reality and just read the document as is. No. No, definitely not. That's the... And I apologize, that's the opposite. I think that's what the court did as evident by its footnote within the order. What we have to do is read, take a common sense review, and in this particular case, first off, inherently, it doesn't make sense, but there's more to it than that. In order to see that that is a clear Scribner's error, there's other indication within the four corners of the warrant that says it is, specifically that after unit 54 was referenced that the affiant said, this is the unit that the storage facility owner observed Kuna putting stuff into and is rented by Kuna. So that statement alone says what the affiant learned, and it also supports the fact that it would be absurd to follow the investigation on 54 if he actually believed it was not. Secondly, right after the statement that the affiant says that I learned that unit 54 is quote not the unit, the very next statement, the affiant says, I thanked the storage unit, the facility owner, and concluded the conversation. So again, that begs the question, if they're asking someone which unit is it, and the only response is it's not this unit, why would then the affiant then say thank you and end the conversation? Well, what's the case? I mean, do we have case law that directs us here, or are we kind of entering new ground? Because I tend to agree that it should be the common sense approach, but I couldn't really find a lot of direction on this. Well, I will concede that there is nothing that's on point with this fact pattern, and the best that we could find was from the Ninth Circuit is the unpublished case. It's cited in the brief, and I'm going to say it because it's Muscovian, and then there's also, I think, a little bit more in which I believe that dates were wrong, but it basically said that these are typographical or Scrivener's errors. And secondly, the other case is a Second Circuit case for its value. How far would this rule go? I mean, we're talking about correcting one word here. What if it's a sentence that's inartfully put in, or they come back and say, oh my gosh, we meant to put the sentence in, we didn't put the sentence in. Where does the line between typographical errors come in, and where does it stop, if we're going to rule on this issue? I understand. Other than the general principle that typographical errors can be considered, or for lack of a better term, corrected during the common sense reading, I don't know that there's a bright line, black letter rule that says this is the extent of the typographical error that favors the affidavit, and this isn't. I think we're back to how we've done jurisprudence forever. Which case is this one more like? Would you agree that if we did not agree with the typographical error, if we, I guess, agreed with the district court, the district court sort of said, I'm not going to give you the benefit of the doubt, the government. Do you agree that the district court would then need to be affirmed if we didn't agree with the typographical error argument? Or do you think there would still be probable cause, even if we don't give the benefit of the doubt on the typographical error? I believe that there's probable cause, because elsewhere in the affidavit, it specifically provides that reasonable nexus to unit 54 to the defendant, Mr. Cunha. With the dog? No. After that. The dog, and I know I'm over my time, but the dog, by not recognizing that typographical error and reading that affidavit consistently with the agent's understanding and knowledge that unit 54 was Cunha's before they let the dog in, the district court turned this into a case that put more weight on the dog sniff, and when the dog sniff did not come up with a positive alert, without the reasonable nexus anymore, that changes the scope of the case. But in this case, the dog sniff, the fact that it wasn't a positive alert, but it was a change in behavior, simply supports the warrant, supports the investigation, but it doesn't stand alone. You know what? You know I get all of this, and I'm not so much talking to the government, I'm just talking to whoever put that affidavit in. You know, play fair. I mean, he basically fudges the facts as to the dog sniff, and I must say that's not fair play. But you may win the case anyway, but I want to say something, not to you, but several layers down, when you're writing an affidavit, play fair and be honest and tell the whole truth. Yes. You'll convene that to your clients. Absolutely, Your Honor. Well, it's not your client. I mean, your client had nothing to do with it. Right. No, I mean, absolutely, and that's why we're not coming here saying that this is a perfect affidavit that needn't be upheld. And thank you, Your Honor. Okay, we'll give you some time for rebuttal. Thank you. Thank you. Morning, Your Honors. May it please the Court. I want to start with, because I think we do have some disagreement in regard to what is the standard of review here. I do not believe that we have any deference to the magistrate for the underlying affidavit review because that has been supplemented, because it's been supplemented by facts that were not submitted to the magistrate, and that's ARTIS, which says once you have fulfilled prong one and you've added omitted statements. So ARTIS, let's talk about ARTIS. I mean, I think you're, let's set that aside for a minute. The problem with ARTIS seems to be that the new evidence that came in negated the evidence that the magistrate relied on. That's not the case here. As you said yourself, it's supplemented. And so, it seems to me that that's a pretty big distinction. If it had turned out that everything that was submitted was false, and therefore the magistrate had no valid information to rely on, I think we'd be in the ARTIS camp. But here, there's six or seven or eight things that the magistrate relied on. There's four that she, you know, she wasn't able to rely on. It's a male. Okay. The magistrate was not able to rely on. And that seems to be different in the ARTIS case. And my disagreement is on this, which would be, when we're looking for probable cause, we're looking at totality of the circumstances. And so, in that review... It's a pretty low standard probable cause. It is. But if you are sitting there and submitting additional evidence that was not considered by the judge because it was not in that affidavit, I don't know how you can sit there and try and work backwards to, here's what the magistrate would have done in this circumstance if they had all of that information in front of them, including the omitted material. I don't know how you can have the situation where we are adding evidence into the affidavit, but then saying that we are going to defer to the magistrate as if they would have had that information in front of them. I think that ARTIS is still correct on that, because any time we are adding... That goes to your deference argument, not necessarily... You're not saying that you win this just straight out because there were omissions. Correct. I'm saying that there is no deference to the underlying magistrate because... Instead of omissions. Exactly. Because the magistrate judge read the affidavit. The magistrate judge did not have all the information about what the dog did or did not do. Exactly. And especially when we're looking at totality of circumstances, we've now added to that totality. How are we going to know what the judge would have done in that situation with the new information? Do we have case law on this particular issue? The deference that would be owed to the magistrate where omissions... I think ARTIS is the case that addresses it. I don't think we have anything better than that. Even if my distinguishing of ARTIS is correct, you still think that that doesn't change the fact that we... As a bottom line, we just don't owe deference to the magistrate. And I think that's both what ARTIS says, and I understand that there's a distinction there. I just don't know how it could be answered differently when we're talking about what did they review. Actually, we're saying now that we're looking at something that they did not review. So your basic point is the facts as we now know them are different from the facts that were presented to the magistrate judge. Exactly. So how can we possibly defer to a decision made on a different set of facts? And that's correct. Okay. But even if we apply de novo review and we subtract out, just take out everything about the dog because in light of the supplementary information, it's not been accurately presented and it doesn't really contribute anything. Why isn't the material about the phone conversations and then the ties of him to Unit 54, why isn't that just a loan sufficient to give probable cause to authorize the search of Unit 54? And so my answer on that is what do we know going into this? We know that he has a previous convictions. There is unnamed people in the community saying that he is supplying low levels drug dealers. And we have information that says this is something that he does not want us to search. But there's problems here which is they strike out on this not once but twice in regard to tying it to drugs. They search the car, can't find any drugs. They take the dog to the unit, they don't get an alert for it. What is tying it? Wait a minute. They don't get an alert but the dog behaves in such a way that it is not normal behavior by that dog as it goes past two different units. So the evidence as to what the dog actually did is weak, weaker than is in the affidavit but it's not irrelevant. I mean, there's a whole set of storage units and the dog doesn't do a formal alert but the dog reacts. The dog reacts but even when you look at and especially from when we're looking at the Frank's hearing, we asked Detective Eastman, the canine dog, of what can cause these situations. Well, it could mean that he thinks he has something. It could be just abnormal odors. I mean, we're talking about a dog here, right? And the wind is blowing. And the wind is blowing and he also does it at the wrong unit, quote unquote wrong unit. And so... But it's kind of the next door unit and the wind's blowing. So here's a variation on my question. Once we conclude that the affidavit is misleading and that a fuller affidavit would have described what we know was actually a report of what the dog did, do we entirely discount what was said in the affidavit about the dog or do we... As if there's something, nothing in there about the dog or do we put into it what should have been said, which is to say the full report of what the dog actually did? I think you consider what should have been put in as determined by the judge at the Frank's hearing because ultimately... So we do get to consider in terms of probable cause what was not in the affidavit but should have been in the affidavit? That's an interesting argument. Why don't you just say you put nothing in there because what was in there was misleading? I think they would have been better off if they hadn't done it because then you don't have that taint of what is the credibility in this situation. Because what you can see is from Detective Watson's testimony who testifies before Dot Eastman, he says, I didn't ask about what change in behavior means and then when the judge asked him, why didn't you make this distinction in regard to change in behavior versus alert? He says, I don't even know what the change of behavior was. Now when you get to Detective Eastman's testimony, he says, I think I either told Detective Bump or Detective Watson and the judge interrupts him and says, it's critical that you tell us what it is because now we're getting beyond whether hearsay can be in an affidavit. Can we think of what is in the totality of all the minds of the people in the police department? I think when you look at that hearing, what Detective Watson's testimony shows is that he was never told anything other than change of behavior. And so they're trying to supplement what Eastman is trying to say when it doesn't appear that was ever even conveyed to Detective Watson who's the affidavit. But I want to go back to this issue about what he said in the phone conversations in the tide of the room because you made it sound like, well, it's just something he doesn't want discovered. But one of the conversations, and it's recounted in the affidavit, was that she said that Watson was wanting to get, was going to bring the dog down to sniff through the storage. And his response is, what the F? No. I mean, that tells you that he's worried that the dog will find that it's drugs. So just from the phone conversation alone, there's probable cause of that unit has drugs. So I actually think that's probably their best argument of evidence in regard to why is. But I think then you have to negate that against the fact of they did do the sniff and he didn't alert. And the case, I would analogize this, but I guess couldn't they have, couldn't they have done the search even without, I mean, you seem to be saying, well, because, because they omitted things, it's tainted the whole thing. You got to throw it all out. We got to distribute. Couldn't they have just gone in with, with that fact and gotten a search warrant? And I think the answer is no. And the case I would analogize this to is Perkins. And that's a situation where Canadian police stop a person who has previous child molestation convictions and they find two images that are naked minors. The Canadian policemen look at them and say, yes, they're minors, they're naked, but they don't meet this lascivious test. And therefore, we don't think they actually meet the definition of child pornography. And then United States gets it. United States takes those same images, quotes the other police officers in Canada, but omits the fact that they had reviewed this on the theory of, well, they're different standards. And as the court points out in Perkins, this lascivious and sexual gratification are really close. You know, and so what, and what the court ultimately does in that situation and says, you've got these two images, they're not enough to buy, to establish probable cause to look at the underlying device, which does in fact have child abuse material. I am not saying that they did not have reasons to investigate. They did not have the information tying, tying the case together in regard to thinking that there is going to be evidence of drug activity at that location because they struck out twice on it, right? They, they say, okay, we're going to search the car, sorry, no drugs. And then they check the unit, sorry, no sniff. And what do they have in regard to the affidavit as far as the communications of tying drugs to that unit? We have this context of a statement of saying that Kuhnhut's taking a blue rhino when the, and the officer even gives his explanation as to why he thinks that's drugs. Expressed fear of a, of a dog sniff at the unit. And he freaks out the way he does in the conversation is probable cause that that's what's in the unit. The dog thing, which they messed up just can be set aside and that's what we do with Franks. We set it aside and we look at the remainder and then there's other things in here tying him to the unit despite the typo. And it's ironic that the district court nails the government for the typo and then does the exact same typo in its own order in the footnote. It's it, it obviously was a typo. The district court showed cause it, it did the same type. If you look outside of the four F the corners affidavit, it's absolutely a typo. It's the question of would have been absolutely clear within the context of it when there's only four references to unit 54 in the, well, but it, it says right on the next page, furthermore, this is the storage unit that Schaefer recently observed Kuna transferring items into and is rented to Kuna's name. So how could you then read the page before the word not as meaning the negation of that? It just doesn't make sense. It's, it's obviously a typographical error viewed in context with common sense. I know my time, my thinking is when you look at that paragraph, he's talking about changing units. And so not 54 would actually make sense in context unless you had, you know, when you have that next paragraph about the part that has the omitted information and the only other places is in the caption and the place to be searched. And so I think it's possible that the judge would have been able to see it as a typographical error. But I think that the standard granted not in search warrants, but just generally for scrivener's errors, would it have been absolutely clear? And I think in this situation, the answer is no. So you think, I just want to be clear on this because I, this is sort of an interesting issue outside of this case of just how we, what we look to. And you're saying that you can look to sort of what you would say is common sense interpretation, but it has to be absolutely clear. There can't even be any other interpretation, otherwise you can't correct it. I think it's going to be something that's very, it's circumscribed by the rules of looking at an affidavit, which is the four corners. I think in other situations. Are you saying we can only look at the four corners and we're stuck with that and we can't use our common sense? You can use your common sense by what's in the affidavit. So and I think that's what the case is that the government cites is there's goal, there's mileposts within the, in the other cases. For example, we observed this on March 21st, 2014. Next one accidentally says 2013. And then also that affidavit is being applied for on March 21st, 2014. And so I think if the goalposts are within the context of the affidavit are absolutely clear then yes, Scrivener's error applies. I think in this situation it's just very distinct from the cases that the government has cited in regard to. They don't have all of those mileposts saying this is what this means. Okay. Thank you. Thank you, Your Honor. We'll give you a minute for rebuttal. I just want to say that not to minimize this, but and in that the Frank's issue outside of the typographical error, the clerical error is really a side note. It abs, once they ran the dog by, they absolutely should have said more. That's, that's clear. But they didn't need to run the dog by at that point. There was probable cause within the investigation as it sat. And the best way to look at it and to just to be colloquial, I guess, is that the law, it's not, it's not uncommon for law enforcement to apply the belt and suspenders approach to an investigation. And I would submit this is exactly what happened here. This is not belt and suspenders. There's belt and then there's suspenders that doesn't tell the whole truth. I agree. Absolutely. We're not, but at the heart, at the gist of the issue in this case, the probable cause was there because without the dog sniff, it should have been expressed as it occurred. It wasn't. But the probable cause was still there. Can I just, I know you're out of time, but one question on the deference to the magistrate. Can you respond to their argument that, look, where there was an omission, you know, you just can't defer to the magistrate because there's additional information here. So any deference would be inappropriate. Well, I, I wouldn't say any deference would be inappropriate, but I do agree that once additional information is either taken out or supplemented, then the district court is looking at it to see if there is still probable cause. That's the part of the materiality aspect. But we would do that de novo then because what, what could we defer to? I mean, I guess we could defer to the fact that statements that weren't negated still were sufficient for probable cause. Yes. Okay. All right. Thank you. Thank you both counsel for your arguments in the case. The case is now submitted.
judges: FLETCHER, NELSON, COLLINS